1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ERICKSON et al., | CASE NO. 2:23-cv-01801-LK |
| Plaintiffs, | ORDER DENYING MOTIONS TO REMAND, FOR DEFAULT, AND TO STRIKE MOTION FOR DEFAULT; GRANTING MOTIONS TO DISMISS |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants. | |

16    This matter comes before the Court on Plaintiffs John and Shelley Erickson's motions to

17 remand, Dkt. Nos. 9, 21, and Defendants' motions to dismiss, Dkt. Nos. 27, 48. Also before the

18 Court are the Ericksons' motion for default, Dkt. No. 23, and JPMorgan Chase Bank, N.A.'s

19 motion to strike the motion for default, Dkt. No. 25. For the reasons set forth below, the Court

20 grants the motions to dismiss, and denies the motions to remand, for default, and to strike the

21 motion for default.

22                                    **I.    BACKGROUND**

23    In 2006, the Ericksons purchased a house in Auburn, Washington with a loan from Long

24 Beach Mortgage Company. Dkt. No. 1-3 at 3; *Deutsche Bank Nat'l Tr. Co., as Tr. for Long Beach*

*Mortg. Loan Trust 2006-4 v. Erickson*, No. 73833–0–I, 2017 WL 571526, at *1 (Wash. Ct. App. Feb. 13, 2017) (unpublished) ("*Deutsche Bank I*").[1] The Ericksons and Long Beach executed a deed of trust with Old Republic Title Ltd. as trustee. *Deutsche Bank I*, 2017 WL 571526, at *1. Long Beach was part of Washington Mutual Inc. ("WaMu"), and when WaMu failed, JPMorgan Chase Bank, N.A. ("Chase") purchased its assets. *Id.* Shortly after executing the loan, Long Beach sold the loan into Long Beach Mortgage Loan Trust 2006–4 with Deutsche Bank National Trust Co. ("Deutsche Bank") as the trustee. *Id.*

The Ericksons did not "make any more payments to Chase after October 2009[.]" Dkt. No. 22 at 2. Eventually, their property was foreclosed upon and sold in a trustee's sale in October 2022, and they have filed this action to "cancel and expunge" what they contend are a forged promissory note lacking the original "wet ink" signature and fraudulent assignments of the deed of trust. Dkt. No. 1-3 at 2, 8, 21–22; Dkt. No. 42 at 5.

**A.    The Long History of This Dispute**

The Ericksons have launched a series of lawsuits regarding the loan and assignments over the course of the past 13 years.

1.    The Ericksons' 2010 Lawsuit

In 2010, the Ericksons filed suit in state court against Long Beach Mortgage Company, WaMu, Deutsche Bank, and Chase asserting various state and federal law theories. *Erickson v. Long Beach Mortg. Co.*, No. 10-1423-MJP, 2011 WL 830727, at *2 (W.D. Wash. Mar. 2, 2011). After the case was removed to this Court, the Court granted the defendants' motion for summary judgment and dismissed the action with prejudice. *Id.* at *3–7. Of relevance here, the Court rejected

---

[1] District courts routinely take judicial notice of public records, court filings and orders, and dockets in other cases. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

1   the Ericksons' contention that the defendants lacked standing to foreclose because they were not

2   the original creditors and could not produce the original note. *Id.* at *3. Emphasizing that "[c]ourts

3   have routinely held that this so-called 'show me the note' argument lacks merit," the Court held

4   that "the Ericksons d[id] not credibly challenge" evidence provided by the defendants

5   "demonstrating their ownership of the note[.]" *Id.* (cleaned up). The Ninth Circuit affirmed. *See*

6   *Erickson v. Long Beach Mortg. Co.*, 473 F. App'x 746, 747 (9th Cir. 2012).

7        2.  The Trust's 2014 Foreclosure Action

8        In January 2013, Chase assigned all beneficial interest under the deed of trust to Deutsche

9   Bank. *Deutsche Bank I*, 2017 WL 571526, at *1; Dkt. No. 68 at 6–8 (Assignment of Deed of Trust

10   and Appointment of Successor Trustee). In 2014, Deutsche Bank filed an action in King County

11   Superior Court to foreclose on the deed of trust. *Deutsche Bank I*, 2017 WL 571526, at *1. The

12   Ericksons responded that Deutsche Bank failed to show that it possessed the original note, and

13   therefore it lacked standing to foreclose. *Id.* The court granted Deutsche Bank's motion for

14   summary judgment and entered judgment and a decree of foreclosure. *Id.*

15        The Ericksons appealed. The Washington Court of Appeals affirmed the foreclosure

16   judgment and held that the Ericksons were barred by collateral estoppel from relitigating their

17   contention that Deutsche Bank did not hold the original note. *Id.* at *3. It also found that "[e]ven

18   if the Ericksons were not collaterally estopped from their substantive arguments, . . . [b]ecause

19   [Deutsche Bank] presented an original, signed, endorsed in blank note at the summary judgment

20   hearing, it was entitled to summary judgment and to enforce the note against the Ericksons." *Id.*

21   The Ericksons sought review by the Washington Supreme Court, which denied their petition. *See*

22   *Deutsche Bank Nat'l Tr. Co. v. Erickson*, 398 P.3d 1139 (Wash. 2017).

23        A sheriff's levy was recorded in 2018, and Mr. Erickson then filed a chapter 13 bankruptcy

24   case. *In re Erickson*, BAP No. WW-22-1186-GFB, 2023 WL 2930057, at *2 (9th Cir. BAP Apr.

1    13, 2023) (unpublished). The bankruptcy case was dismissed, and the dismissal was affirmed. *Id.*

2    at *8. Ms. Erickson filed separate bankruptcy matters, which were also dismissed. *Id.* at *2; *In re*

3    *Erickson*, BAP Nos. WW-19-1251-FSTa, WW-19-1277-FSTa, 2020 WL 2849930 (9th Cir. BAP

4    May 29, 2020).

5        3.   The Ericksons' 2019 Action

6        In 2019, the Ericksons filed a CR 60 motion in King County Superior Court seeking, among

7    other things, a ruling that the foreclosure judgment was fraud on the court and a declaratory

8    judgment that the 2015 judgment was void. *See Erickson v. Deutsche Bank Nat'l Tr. Co., as Tr.*

9    *for Long Beach Mortg. Loan Tr. 2006-4*, No. 81648-9-I, 2021 WL 5564415, at *1 (Wash. Ct. App.

10   Nov. 29, 2021) (unpublished) ("*Deutsche Bank II*"). The court granted Deutsche Bank's motion

11   for summary judgment based on collateral estoppel because the 2010 and 2014 actions had already

12   dispensed with the Ericksons' argument (i.e., that "Deutsche Bank does not possess the valid,

13   original[] note, and therefore did not have standing to foreclose on their home"). *Id.* at *3. The

14   Washington Court of Appeals affirmed, holding that collateral estopped barred the suit because

15   (1) the issue was identical, (2) the 2010 and 2014 actions "ended on a valid, final judgment on the

16   merits," (3) the Ericksons were parties to the prior actions, and (4) collateral estoppel would not

17   work an injustice on them. *Id.* at *3–4 (noting that the Ericksons "have had more than a full and

18   fair opportunity to litigate their case in both state and federal court"). The Washington Supreme

19   Court denied review and the U.S. Supreme Court denied certiorari. *Erickson v. Deutsche Bank*

20   *Nat'l Tr. Co.*, 508 P.3d 673 (Wash. 2022); *Erickson v. Deutsche Bank Nat'l Tr. Co.*, 143 S. Ct.

21   776 (2023).

22       4.   The Ericksons' 2020 Action

23       On May 7, 2020, the Ericksons filed another complaint in King County Superior Court,

24   this time asserting fraud against the law firm Stoel Rives, LLP and several of its attorneys who

represented Deutsche Bank in both the 2014 foreclosure action and the 2019 lawsuit. *See Erickson v. Power*, No. 82755-3-I, 2022 WL 1210523, at *2 (Wash. Ct. App. 2022). The court granted Stoel Rives' motion for summary judgment based on collateral estoppel, and the Ericksons appealed. *Id.* at *2, 4. The Washington Court of Appeals held that collateral estoppel applied because the Ericksons were alleging that Stoel Rives "perpetrated fraud upon the court by representing entities without the authority to foreclose because the note was not properly held by Deutsche Bank," and that issue was previously resolved against them in the 2010 and 2014 actions. *Id.* at *4–5; *see also id.* at *5 (finding that in both the 2010 and 2014 actions, the courts "concluded Deutsche Bank held the note and had the authority to foreclose"). The court further noted that the final judgments entered in the 2010, 2014, and 2019 cases resolved the issue that "Deutsche Bank and its agents committed fraud by foreclosing without holding the note." *Id.* at *5.

The Washington Supreme Court denied review, and the U.S. Supreme Court denied certiorari. *Erickson v. Stoel Rives, LLP*, 518 P.3d 211, 212 (Wash. 2022); *Erickson v. Power*, 143 S. Ct. 2494 (2023).

5. The Ericksons' 2022 Appeal of the Trustee's Sale

On October 14, 2022, a trustee's sale occurred and Deutsche Bank, via its corporate assignee, purchased the property. Dkt No. 1-1 at 1642–43, 1658–61; Dkt. No. 49-2 at 3, 5. Deutsche Bank moved for confirmation of the sale, the Ericksons objected, and the state court confirmed the sale. Dkt. No. 49-2 at 5. The Ericksons unsuccessfully moved for reconsideration. *Id.* The Ericksons then appealed, arguing that there was an error in the judgment amount and that Deutsche Bank's corporate assignee was a "nonparty" that lacked authority to enforce the judgment or purchase the property as a judgment creditor. *Id.* at 3. On November 13, 2023, the Washington Court of Appeals affirmed that Deutsche Bank had authority to purchase the property via a corporate assignee but remanded the issue of the prejudgment interest miscalculation to the

trial court. *Id.* The court also held that the "process was properly followed" to execute a judgment in the name of an assignee. *Id.* at 6–7.

**B.      The Current Lawsuit and Claims**

On October 11, 2023, the Ericksons filed a complaint in King County Superior Court for declaratory relief and "to cancel and expunge instruments." Dkt. No. 1-3 at 1–2; Dkt. No. 2-1 at 2. They aver that they never signed the note securing their loan and "the security instrument does not exist." Dkt. No. 1-3 at 17. They also contend that the assignments of their loan and the deed of trust were forgeries and otherwise improper. *Id.* at 22, 35–36. As a result of those issues, the later foreclosure sale on their property was "bogus." *Id.* at 8. The Ericksons contend that Chase, the master servicer of the loan, purchased their mortgage in 2013 through "forged mortgage documents," including the unsigned note. Dkt. No. 1 at 2 (Chase explaining its role); Dkt. No. 1-3 at 9, 12.

In addition to Chase, the Ericksons name additional Defendants. They contend that Defendant Rebecca Dietrich, a Chase employee, created and executed "forged deed[s] of assignment" and was a "'robosigner,' affixing her signature to any document put in front of her," including the 2013 assignment. *Id.* at 6–7, 26. The Ericksons also name Tara L. Tucker in her individual capacity as notary for Chase and contend that she knew or should have known that the assignment of the deed of trust was fraudulent. *Id.* at 2, 4–5; *see also id.* at 27–28.

The Ericksons also sue Lance Olsen "in his individual capacity and in his capacity of employee, agent and/or partnership" of the Routh Crabtree and Olsen ("RCO") law firm and the McCarthy & Holthus ("M&H") law firm. *Id.* at 8. The Ericksons contend that Mr. Olsen executed the "forged assignment of deed of trust" and both law firms disseminated it for a Sheriff's sale at auction in October 2022. *Id.* at 9, 15–16. The Ericksons also contend that they contacted Mr. Olsen in 2022 to view a "Wet Ink" copy of their allegedly signed note but Mr. Olsen refused to allow

1    them to do without a court order. *Id.* at 14.

2        The Ericksons also name as Defendants Quality Loan Servicing of Washington LLC

3    ("QLS"), and allege that it and M&H "disseminated" the forged assignment of the deed of trust.

4    *Id.* at 16. And last, they name Heather Smith "in her individual capacity and agent acting on behalf

5    of [Chase] and employee for N.W. Trustee[] a non-judicial trustee in Bellevue Washington" who

6    "forged Assignments of Deed and forged appointment of Successor Trustee on plaintiffs['] King

7    County land records." *Id.* at 2, 22–23. The Ericksons further allege that Ms. Smith should have

8    known that "the plaintiffs['] title was a broken chain of title" but she nevertheless "executed and

9    filed the Assignment of Deed of Trust . . . clouding plaintiff's title while she was employed at NW

10   Trustees in Bellevue Washington[.]" *Id.* at 6; *see also id.* at 23.

11       The Ericksons seek a declaratory judgment "to determine and declare the rights and interest

12   of the parties under an Assignment of Mortgage[.]" *Id.* at 35; *id.* at 41 (requesting that the Court

13   hold a hearing into the assignment of the mortgage, "find[] it to be legally insufficient and

14   misrepresentative as to its falsity, [and] declare the Instrument null and void"). They assert "a

15   single and sole Cause of Action for Cancellation and Expunge[ment] of forged assignments Deeds

16   of Trust and forged notes and to nullify the bogus foreclosure and sale at auction to a fake credit

17   bid by a non party." *Id.* at 40; *see also id.* at 17–18 (seeking an order declaring that the note is

18   unenforceable, and the assignment of the deed of trust, the appointment of the trustee, "and all

19   subsequent[] assignments of Deed of Trust are Void and Void ab initio."); *see also id.* at 41–43

20   (seeking cancellation and expungement of the corporate assignment of the mortgage and note).

21       On November 21, 2023, Chase—which had not yet been served with the complaint—

22   removed the case to this Court based on diversity of the parties, arguing that the Ericksons named

23   the non-diverse Defendants—QLS, M&H, and Mr. Olsen—"solely to destroy diversity of

24

citizenship." Dkt. No. 1 at 1–2.[2] The Ericksons are citizens of Washington. *Id.* All other

Defendants except Ms. Smith and Ms. Tucker consented to removal. Dkt. No. 1 at 5. Ms. Tucker

is apparently deceased, and the Ericksons voluntarily dismissed her from the lawsuit on November

28, 2023. Dkt. No. 29 at 1 n.1; Dkt. No. 9 at 13. The Ericksons did not raise Ms. Smith's consent

(or lack thereof) in their motion to remand, *see generally* Dkt. Nos. 9, 21, so any objection to

related defects are waived. *See also* 28 U.S.C § 1447(c) (non-jurisdictional defect in removal must

be raised within 30 days); *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346

F.3d 1190, 1192 (9th Cir. 2003).

## C.    The Pending Motions

The Ericksons filed a timely motion to remand, arguing, among other things, that diversity

is lacking because Chase is a Washington resident. Dkt. No. 9 at 11. Before Defendants responded

to the first motion to remand, the Ericksons filed another motion to remand and for entry of default

judgment against Ms. Smith. Dkt. No. 21. Although the second motion includes a contention that

all Defendants are Washington residents, it is primarily aimed at seeking default against Ms. Smith.

*Id.* at 2–3. The Ericksons next filed a motion for default against all defendants "due to no affidavit

nor declaration has been ever filed with this court[.]" Dkt. No. 23 at 2.[3] The Court denies the

Ericksons' motions for default because none of the Defendants has "failed to plead or otherwise

defend." Fed. R. Civ. P. 55(a); *see, e.g.*, Dkt. Nos. 27, 48, 50–53 (Defendants' filings showing that

---

[2] Defendants' notice of removal states that the Ericksons have also named non-diverse Defendants RCO and NW Trustee. *Id.* at 1–2. The Ericksons' complaint, which is difficult to decipher, does not appear to name those entities as Defendants, but even if it did, the claims against them are untenable for the same reasons set forth below.

[3] The Ericksons contend that Chase has not appeared, and they "object to all unsworn documents" filed by Chase's counsel because they aver that Chase "has not established counsel has the authority to act." Dkt. No. 33 at 2; *see also* Dkt. No. 60 at 2. They make the same contention regarding counsel for other Defendants. Dkt. No. 36 at 2, 10; Dkt. No. 38 at 2–3, 6. Those contentions are meritless because counsel entered appearances by signing the notice of removal. Dkt. No. 1 at 5; *see also* LCR 83.2(a) ("An attorney eligible to appear may enter an appearance in a civil case by properly signing in accordance with the ECF Filing Procedures and filing a . . . Notice of Removal . . . on behalf of the party the attorney represents.").

ORDER DENYING MOTIONS TO REMAND, FOR DEFAULT, AND TO STRIKE MOTION FOR DEFAULT;
GRANTING MOTIONS TO DISMISS - 8

they are defending). The Court also denies as moot Chase's motion to strike the motion for default. Dkt. No. 25.

Defendants QLS, M&H, and Mr. Olsen filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. No. 27. They argue that they have no interest in the rem—the assignments, mortgage property, or foreclosure judgment—and the Ericksons have no ripe controversy with them. *Id.* at 2–3. Ms. Smith and Ms. Dietrich joined the motion to dismiss. Dkt. No. 28 at 1–2 (Ms. Smith); Dkt. No. 29 at 1–2 (Ms. Dietrich).

Chase also filed a motion to dismiss, arguing, among other things, that the Ericksons are collaterally estopped from pursuing their claims because it "has been long established that the Trust held the original note, had the authority to foreclose[,] and did not act fraudulently." Dkt. No. 48 at 1–2. Ms. Dietrich, Mr. Olsen, M&H, and QLS joined Chase's motion to dismiss. Dkt. Nos. 53 (Ms. Dietrich), 57 (Mr. Olsen, M&H, and QLS). The Court requested supplemental briefing, noting that if Chase's contention that the Ericksons' claims were barred by collateral estoppel is correct, the doctrine of non-mutual collateral estoppel could also bar the Ericksons' claims against the other Defendants. Dkt. No. 64 at 1–2. The parties then filed their supplemental briefs. Dkt. Nos. 69–71, 75, 77.[4] The Ericksons dispute that issue preclusion applies, *see generally* Dkt. No. 69, and Defendants argue that it does apply, Dkt. No. 75 at 3–7 (QLS, M&H, and Mr. Olsen); Dkt. No. 77 at 5–7 (Chase and Ms. Dietrich).

## II.   DISCUSSION

### A.   Fraudulent Joinder and Remand Futility

Section 1441(a) permits a defendant to remove a case from state court to federal court when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a).

---

[4] The Court struck the Ericksons' third declaration in support of their supplemental brief as untimely under Local Civil Rule 7(d), Dkt. No. 74, and it strikes their amendment to the third declaration for the same reason, Dkt. No. 78.

1    Federal diversity jurisdiction exists over all civil actions where the matter in controversy exceeds

2    $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). For diversity

3    jurisdiction to apply, there must be complete diversity among the parties, and, as a general rule, if

4    one or more plaintiffs are citizens of the same state as one or more defendants, federal diversity

5    jurisdiction is absent. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n.3 (1996).

6             However, for purposes of assessing complete diversity, the Court can ignore the presence

7    of defendants who have been fraudulently joined. *Hunter v. Philip Morris USA*, 582 F.3d 1039,

8    1043 (9th Cir. 2009). A plaintiff can establish fraudulent joinder in one of two ways: "(1) actual

9    fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of

10   action against the non-diverse party in state court." *Id.* at 1044 (quotation marks and citation

11   omitted). "Fraudulent joinder is established the second way if a defendant shows that an

12   'individual[ ] joined in the action cannot be liable on any theory.'" *Grancare, LLC v. Thrower ex*

13   *rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313,

14   1318 (9th Cir. 1998)). "But if there is a possibility that a state court would find that the complaint

15   states a cause of action against any of the resident defendants, the federal court must find that the

16   joinder was proper and remand the case to the state court." *Id.* (quotation marks and citation

17   omitted).

18           Even if non-diverse defendants are properly joined and thus deprive the court of diversity

19   jurisdiction, a court may dismiss a case rather than remand it to state court where it is "certain that

20   a remand to state court would be futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir.

21   1991). Futility exists if "there is 'absolute certainty' that the state court would dismiss the action

22   following remand," *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920

23   n.6 (9th Cir. 2022) (quoting *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir.

24   2016)); *see also Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1190 (9th Cir. 2022)

1    ("Our precedent . . . continues to recognize the futility exception.").[5]

2            Because the Ericksons' claims are barred by the issue preclusion doctrine for the reasons

3    discussed below, the non-diverse Defendants have been fraudulently joined and remand would be

4    futile. Even if the claims were not barred by issue preclusion, they are unsalvageable for additional

5    reasons discussed below.

6    **B.      Issue Preclusion and/or Claim Preclusion Bar the Ericksons' Claims**

7            The Constitution provides that "Full Faith and Credit shall be given in each State to the

8    public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. And

9    under 28 U.S.C. § 1738, a federal court "must give to a state-court judgment the same preclusive

10   effect as would be given that judgment under the law of the State in which the judgment was

11   rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 81 (1984). "By precluding

12   parties from contesting matters that they have had a full and fair opportunity to litigate," the related

13   doctrines of claim and issue preclusion "protect against the expense and vexation attending

14   multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing

15   the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned

16   up).

17           "[C]laim preclusion" is a doctrine providing that "a final judgment forecloses successive

18   litigation of the very same claim, whether or not relitigation of the claim raises the same issues as

19   the earlier suit." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)) (internal

20   quotation marks omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of

21   fact or law actually litigated and resolved in a valid court determination essential to the prior

22

23   ---
     [5] The Ninth Circuit has recently questioned whether it should "reconsider the futility exception en banc and abandon
     it" because "the futility exception does not comport with § 1447(c)'s plain text." *Sauk-Suiattle Indian Tribe*, 56 F.4th
24   at 1191–92 (Bennett, J., concurring). As of now, however, it has not done so, and this Court is bound by the Ninth
     Circuit's precedent. *See Wash. Election Integrity Coal. United v. Bradrick*, No. C21-cv-01386-LK, 2022 WL 4598504,
     at *5 (W.D. Wash. Sept. 30, 2022).

1    judgment, even if the issue recurs in the context of a different claim." *Id.* (cleaned up). In

2    determining the preclusive effect of a state court judgment, federal courts follow the state's rules

3    of preclusion. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 481–82 (1982).

4            In Washington, issue preclusion (also known as collateral estoppel) "bars relitigation of an

5    issue in a later proceeding involving the same parties." *Schibel v. Eymann*, 399 P.3d 1129, 1132

6    (Wash. 2017). However, the doctrine of defensive non-mutual collateral estoppel may bar

7    plaintiffs from asserting a claim that they previously litigated and lost against a different defendant.

8    *See, e.g.*, *Sahlberg v. P.S.C. Inc.*, 626 Fed. App'x 719, 721–22 (9th Cir. 2015); *LaRoche v. Smith*,

9    No. C15-1003-TSZ, 2016 WL 1221658, at *2 (W.D. Wash. Mar. 19, 2016). Washington courts

10   "apply nonmutual collateral estoppel so long as the party against whom preclusion is sought was

11   a party or in privity with a party to the prior litigation and had a full and fair opportunity to litigate

12   the issue in question." *State v. Mullin–Coston*, 95 P.3d 321, 324 (Wash. 2004); *see also Gausvik*

13   *v. Perez*, 396 F. Supp. 2d 1173, 1175 (E.D. Wash. 2005) (observing that Washington and federal

14   law concerning non-mutual collateral estoppel are not materially different).

15           For issue preclusion to apply, (1) the issue in the earlier proceeding must be identical to

16   the issue in the later proceeding, (2) the earlier proceeding must have ended with a final judgment

17   on the merits, (3) the party against whom collateral estoppel is applied must have been a party, or

18   in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel must not be

19   an injustice. *Schibel*, 399 P.3d at 1132.

20           Here, the Ericksons' complaint boils down to these contentions: Deutsche Bank did not

21   hold the original note, the note was unsigned/fraudulent, and the assignments of the deed of trust

22   and the appointment of a successor trustee were robo-signed and/or fraudulent. Dkt No. 1-3 at 9–

23   14, 17–20, 47–48; *see also* Dkt. No. 69 at 3 (Plaintiffs' supplemental brief contending that the note

24   and assignment of the deed of trust were forged and void *ab initio*). Those issues have been raised

ORDER DENYING MOTIONS TO REMAND, FOR DEFAULT, AND TO STRIKE MOTION FOR DEFAULT;
GRANTING MOTIONS TO DISMISS - 12

and rejected multiple times. In the 2010 action, the court held that Deutsche Bank "provide[d] evidence demonstrating their ownership of the note, which the Ericksons do not credibly challenge." *Long Beach Mortg. Co.*, 2011 WL 830727, at *3. In the 2014 action, the state court held that Deutsche Bank had shown that it was the holder of the original note and had the authority to enforce it, and the Washington Court of Appeals affirmed and held that "collateral estoppel bars the Ericksons' arguments that Deutsche Bank does not hold the original note," and Deutsche Bank "was entitled to . . . enforce the note against the Ericksons." *Deutsche Bank I*, 2017 WL 571526, at *1, 3–4. The Washington Court of Appeals applied collateral estoppel to that issue twice more. *See Deutsche Bank II*, 2021 WL 5564415, at *3–4 (the 2019 action); *Power*, 2022 WL 1210523, at *5–6 (the 2020 action). Most recently, on November 13, 2023, the Court of Appeals upheld the assignment of the deed of trust and held that Deutsche Bank "was authorized to act via its corporate assignee." Dkt. No. 49-2 at 3, 6–7. Those rulings were final judgments on the merits. *Deutsche Bank II*, 2021 WL 5564415, at *3 ("A final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect" including an order granting summary judgment (cleaned up)).[6] For these reasons, the first two elements of issue preclusion are met.

The third element is likewise easily met: the Ericksons were parties in all of the prior lawsuits. Although they contend that preclusion does not apply because they did not previously

---

[6] Even if the Ericksons did not previously raise their robo-signing theory, it is barred by claim preclusion. "[C]laim preclusion[] bars litigation of claims that were brought or might have been brought in a prior proceeding." *Weaver v. City of Everett*, 450 P.3d 177, 182 (Wash. 2019). A party seeking to apply res judicata must establish four elements as between a prior action and a subsequent challenged action: concurrence of identity (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made. *Id.* at 185. The Ericksons now allege that Ms. Dietrich created and executed "forged deed[s] of assignment" and robo-signed various documents, including the 2013 assignment. Dkt. No. 1-3 at 6, 8, 25–26. But they have litigated Chase's liability related to their foreclosure, including whether Chase engaged in fraud, on multiple occasions, *see, e.g.*, *Long Beach Mortg. Co.*, 2011 WL 830727; *Deutsche Bank I*, 2017 WL 571526, and as a Chase employee, Ms. Dietrich is in privity with Chase, *Kuhlman v. Thomas*, 897 P.2d 365, 368 (Wash. Ct. App. 1995). The Ericksons' attempt to put a new gloss on facts and failed arguments cannot succeed.

1    sue Deutsche Bank or Chase, Dkt. No. 69 at 5–6, 11, 16–17, that assertion is plainly untrue, as set

2    forth above. And it is also irrelevant: under the doctrine of defensive non-mutual collateral

3    estoppel, the prior rulings preclude the Ericksons from relitigating the same issues against new

4    defendants. *See, e.g.*, *Sahlberg*, 626 Fed. App'x at 722; *LaRoche*, 2016 WL 1221658, at *2.

5         The fourth element of collateral estoppel, the injustice element, is also satisfied. "[R]ooted

6    in procedural unfairness," this element is met when "the parties to the earlier proceeding received

7    a full and fair hearing on the issue in question." *Schibel*, 399 P.3d at 1133–34 (cleaned up); *see*

8    *also Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 962 (Wash. 2004) ("The injustice

9    component is generally concerned with procedural, not substantive irregularity."). As detailed

10   above, the Ericksons have had multiple full and fair hearings on the issues. As the Washington

11   Court of Appeals explained when applying collateral estoppel, the Ericksons "have had more than

12   a full and fair opportunity to litigate their case in both state and federal court. Each time, their

13   claim has failed." *Deutsche Bank II*, 2021 WL 5564415, at *4. The Ericksons assert that the judges

14   in their prior cases erred, Dkt No. 60 at 23–24; Dkt. No. 69 at 12–15, 21–26, but their

15   disagreements with the prior orders, which were affirmed on appeal, do not demonstrate any

16   absence of full and fair hearings. Rather, "[a] final judgment is afforded preclusive effect even if

17   erroneous." *Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023).

18        The Ericksons also contend that because the assignment of their debt was improper, their

19   debt was forgiven in 2006 under 26 U.S.C. § 108(i)(4)(B). Dkt. No. 33 at 4–5; Dkt. No. 60 at 6;

20   Dkt. No. 69 at 4–5, 35. However, that internal revenue code section addresses income from

21   discharge of indebtedness and does not show that their debt was forgiven. No injustice results from

22   the application of issue preclusion to their current claims. Because the Ericksons base their claims

23   on the precluded issues, *see generally* Dkt. No. 1-3, their claims are barred.

24   **C.    Additional Reasons Support Dismissal without Leave to Amend**

1    Even if issue preclusion or claim preclusion does not bar all of the Ericksons' claims, their

2    claims cannot survive under any theory for additional reasons.

3        First, the Ericksons contend that the assignments of the deed of trust and the appointment

4    of the successor trustee were fraudulent because they were robo-signed. Dkt. No. 1-3 at 9–14, 47–

5    48. However, as the borrowers, the Ericksons lack standing to challenge any alleged robo-signing.

6    *See, e.g.*, *Ukpoma v. U.S. Bank Nat'l Ass'n*, 12-CV-0184-TOR, 2013 WL 1934172, at *4 (E.D.

7    Wash. May 9, 2013) (dismissing borrower's allegations of "robo-signing" of documents used to

8    initiate foreclosure proceedings because plaintiff lacked standing to assert that the assignments

9    were fraudulently executed).[7]

10       Second, the Ericksons have not supported their contention that robo-signing is inherently

11   wrongful or fraudulent. *Cf. Bain v. Metro. Mortg. Grp. Inc.*, No. C09-0149-JCC, 2010 WL 891585,

12   at *6 (W.D. Wash. Mar. 11, 2010) ("There is simply nothing deceptive about using an agent to

13   execute a document, and this practice is commonplace in deed of trust actions.").

14       Third, the Ericksons' allegations of fraud are time-barred. As Chase notes, the Ericksons

15   alleged fraud in their 2019 action, *see Deutsche Bank II*, 2021 WL 5564415, at *1, which was filed

16   on May 13, 2019, Dkt. No. 49-4 at 3. Therefore, even if they did not discover the alleged fraud

17   before that time, the three-year statute of limitations ran on May, 13, 2022—over a year before

18   they filed this action. *See Katz v. Katz*, No. C22-5040-JLR, 2022 WL 17324323, at *4 (W.D.

19   Wash. Nov. 29, 2022) ("A three-year statute of limitations applies to claims 'for relief upon the

20

---

21   [7] *See also Brodie v. Nw. Tr. Servs., Inc.*, No. 12-CV-0469-TOR, 2012 WL 6192723, at *2–3 (E.D. Wash. Dec. 12, 2012) (agreeing with other courts "faced with similar allegations of robo-signing [that] concluded that a borrower
22   lacks standing to challenge an allegedly fraudulent assignment of a deed of trust and/or an appointment of a successor trustee," and noting that "[c]ontrary to Plaintiff's assertions, robo-signing of the Assignment of Deed of Trust and/or the Appointment of Successor Trustee would not render these agreements—let alone the underlying debt obligation—
23   void *ab initio*"); *Osburn v. Ocwen Loan Servicing LLC*, No. 1:18-CV-00310-LJO-SAB, 2018 WL 3093494, at *8 (E.D. Cal. June 22, 2018) ("It is the prevailing view that homeowners lack standing to challenge the validity of robo-
24   signatures because the transaction is voidable, not void."); *report and recommendation adopted,* 2018 WL 3629926 (E.D. Cal. July 27, 2018).

ORDER DENYING MOTIONS TO REMAND, FOR DEFAULT, AND TO STRIKE MOTION FOR DEFAULT;
GRANTING MOTIONS TO DISMISS - 15

ground of fraud,' including actions to set aside a conveyance of real property based on an allegation of fraud." (quoting Wash. Rev. Code § 4.16.080(4)).

Fourth, the Ericksons have attempted to assert a new civil conspiracy claim in response to the motions to dismiss, but they cannot assert a new claim without leave of the Court. Dkt. No. 69 at 26 (appearing to assert a new civil conspiracy claim); Fed. R. Civ. P. 15(a)(2); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").[8] That claim is also barred by the three-year statute of limitations. *See* Wash. Rev. Code § 4.16.080(2); *see also Patrick v. Ramsey*, No. C23-0630-JLR, 2023 WL 6680913, at *4 (W.D. Wash. Oct. 12, 2023) ("Claims for . . . civil conspiracy under Washington law are subject to a three-year statute of limitations.").

Fifth, the Ericksons aver that the Defendants have committed felonies, Dkt. No. 69 at 12, but have failed to show that their far-fetched allegations of criminal wrongdoing establish a private cause of action.

Despite filing thousands of pages of arguments and exhibits, the Ericksons have not stated a claim against any of the Defendants. The Court declines to grant them leave to amend because their complaint "could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## D.    The Court Declines to Enter Fees and Costs or a Vexatious Litigant Order

QLS, M&H, and Mr. Olsen request that the Court grant them their fees and costs against the Ericksons. Dkt. No. 27 at 3 ("Defendants should be dismissed with an award of fees and co[s]ts."). However, the Court denies that relief because Defendants have not identified a basis for

---

[8] Any request for relief in a responsive brief is likewise not properly before the Court. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also Sergeant v. Bank of Am., N.A.*, No. C17-5232-BHS, 2018 WL 1427345, at *1 n.2 (W.D. Wash. Mar. 22, 2018) ("[R]equests for affirmative relief must be made in a motion, not in the response[.]" (citing LCR 7(b)(1), 7(k))).

ORDER DENYING MOTIONS TO REMAND, FOR DEFAULT, AND TO STRIKE MOTION FOR DEFAULT; GRANTING MOTIONS TO DISMISS - 16

it. *See Golden Pisces, Inc. v. Fred Wahl Marine Constr., Inc.*, 495 F.3d 1078, 1081 (9th Cir. 2007) ("[T]he American Rule generally precludes an award of attorneys' fees absent statutory authorization," "an enforceable contractual fees provision," or the applicability of equitable exceptions).

Chase requests that the Court enter a vexatious litigant order against the Ericksons requiring them to obtain the Court's leave before filing any new action. Dkt. No. 48 at 12; Dkt. No. 77 at 10. The Court is sympathetic to the burden and expense the Ericksons have imposed on Defendants with their repetitive litigation. However, a vexatious litigant order is unlikely to solve the problem because the Ericksons have filed their complaints in state court, not federal court. Although the Court has authority to enter a pre-filing order in aid of its own jurisdiction, 28 U.S.C. § 1651(a), it lacks authority to limit filings in the state courts. Defendants must look elsewhere for the relief they seek. However, the Court cautions Plaintiffs that they may be sanctioned if they submit frivolous complaints, motions, or briefs in this Court in the future. *See* Fed. R. Civ. P. 11(c); LCR 11(c).

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss, Dkt. Nos. 27, 48, and DENIES the motions to remand, Dkt. Nos. 9, 21, for default, Dkt. No. 23, and to strike the motion for default, Dkt. No. 25. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiffs.

Dated this 28th day of February, 2024.

Lauren King
United States District Judge